UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONEL ROJAS RIVERA, individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AGRESERVES, INC, et al.,<br><br>Defendant. | Case No.: 1:15-cv-00613 JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT<br><br>(Doc. 29) |

Leonel Rojas Rivera requests preliminary approval of the class settlement with the defendant. (Doc. 29) In this motion, Plaintiff seeks: (1) conditional certification of settlement classes; (2) preliminary approval of the settlement terms; (3) appointment as the class representative; (4) appointment of Gregory N. Karasik of Karasik Law Firm and Sahag Majarian II of Law Offices of Sahag Majarian II as Class Counsel; (5) approval of the class notice and related materials; (6) appointment of Dahl Administration as the claims administrator; and (7) setting deadlines for final approval of the settlement. Defendant does not oppose the motion for preliminary approval of the class settlement. (Doc. 29-4)

The Court has considered the proposed settlement agreement between the parties[1], and the proposed Class Notice and documents.  For the following reasons, Plaintiff's motion for preliminary approval of class settlement is **GRANTED**.

## BACKGROUND

In this action, the plaintiff alleges he worked for the defendant as an almond harvester. (Doc. 7 at 3) The work was seasonal from May or June through September or October.  Id.  During his employment, he was not paid all of the minimum or overtime wages he was owed due to the "uneven time rounding practices."  Id.  Another reason he was not paid for all of his hours worked is because, though 30 minutes was deducted from his hours each day for meal breaks, frequently, he was not allowed to stop work for meals.  Id. at 4.  Also, he was not paid overtime rates on his "end of season bonuses."  Id.

In addition, the plaintiff alleges that he was regularly not permitted to take a meal break after five hours of work and was never provided a second meal break or a third rest break on days he worked more than ten hours.  (Doc. 7 at 4)  He alleges also there are others similarly situated.  Id.

Based upon these factual allegations, the plaintiff contends the defendant is liable for failure to pay minimum wages in violation of Cal. Labor Code §1197, failure to pay overtime wages as required by Wage Order 14, failure to provide meal and rest periods as required by Cal. Labor Code § 226.7 and Wage Order 14, unfair competition under Cal. Bus. & Prof. Code § 17200, failure to provide accurate wage statements as required by Cal. Labor Code § 226 and for failure to pay all wages owed upon termination as provided in Cal. Labor Code §§ 201 or 202.  The plaintiff seeks unpaid wages, penalties, liquidated damages and restitution in addition to fees and costs.  Doc. 7 at 16)

The parties engaged in a full-day of mediation on July 7, 2016 attended mediation.  (Doc. 61)  At the mediation, the parties resolved their dispute and have stipulated to conditional class certification for purposes of settlement.  (Doc. 29-4)

## THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement

---

[1] Counsel SHALL obtain the signatures on the settlement document no later than **September 30, 2016**.

2

amount not to exceed $460,000.  (Doc. 29-4 at 5, Settlement § 1.15)

## I.     Payment Terms

The settlement fund will resolve the claims of "all seasonal employees of Defendant who worked in South Valley Farms harvesting operations during the time period between March 10, 2011 and December 31, 2015" divided into two subclasses: those "who did not execute a release agreement with Defendant relating to the claims made in the Action" and those "who did execute a release agreement with Defendant relating to the claims made in the Action." (Doc. 29-4 at 4, Settlement § 1.4)

In addition, the Settlement provides for payments to the Class Representative, Class Counsel, and the Claims Administrator. (Doc. 29-4 at 8-9; Settlement § 4.1)  Specifically, the Settlement provides for the following payments from the gross settlement fund:

- Class Representatives will receive up to $7,500;
- Class Counsel will receive up to $115,000— which equals 20% of the gross settlement fund—and up to $20,000 for expenses; and
- The Claims Administrator will receive up to $25,000 for fees and expenses.

Id.

## II.    Releases

The Settlement provides that Plaintiff's and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, release Defendant from the claims arising in the class period.  Specifically, the Settlement provides:

> In consideration of the Gross Settlement Amount and upon entry of the Final Approval Order, Plaintiff and Participating Class Members shall fully, fmally, and forever release, settle, relinquish and discharge the Released Parties from any and all state or federal wage, and penalty claims against the Released Parties and any and all claims, debts, liabilities, demands, actions, or causes of actions of every nature and description that were alleged or that reasonably could have arisen out of the factual allegations contained in the First Amended Complaint (the "Complaint") on file with this court including, but not limited to, claims for compensation, overtime, minimum wages, off-the-clock work, meal period violations, rest period violations, waiting time penalties, itemized wage statement penalties, other penalties, attorneys' fees, and/or costs and all claims under the Private Attorneys General Act of 2004, and the Unfair Competition Law, arising from the claims described above within the Class Period. This release excludes the release of claims not permitted by law, claims arising outside of the Class Period, claims for unemployment, claims for retaliation, and claims for workers' compensation.

(Doc. 29-4 at 7, Settlement § 2.1)

The release for Plaintiff encompasses more claims than the release of Class Members, including

"all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the Effective Date" whether they were known to Plaintiff at that time despite the provisions of California Civil Code § 1542. (Doc. 29-4 at 7, Settlement § 2.2)

### III.   Objections and Opt-Out Procedure

Any Class Member who wishes may file objections or elect not to participate in the Settlement. The Notice of Pendency of Class Action and Proposed Settlement ("the Notice") explains the claims that are released as part of the Settlement. (Doc. 29-4 at 10-11 § 5)  In addition, the Notice explains the procedures for class members to request exclusion from the class and object to the terms of the Settlement. (*Id.* at 33-34)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

### I.   Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the general class and subclasses are defined as:

> **General Class**: all seasonal employees of Defendant who worked in South Valley Farms harvesting operations during the time period between March 10, 2011 and December 31, 2015 ("Harvesters").

4

> **Sub Class #1**: all Harvesters who <u>did not</u> execute a release agreement with Defendant relating to the claims made in the Action.
>
> **Sub Class #2**: all Harvesters who <u>did</u> execute a release agreement with Defendant relating to the claims made in the Action.

(Doc. 29-4 at 4, Settlement § 1) According to Fed. R. Civ. P. 23, the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *See Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the classes are maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.     Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

#### 1.     Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002)

("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, 334 employees are potential members of the class. Therefore, the class is sufficiently numerous.

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Commonality must be shown by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 338. In this case, Plaintiff contends the following are questions common to the class:

> 1. Did rounding practices result in Almont Harvesters not getting paid wages for all the hours they actually worked?
>
> 2. Did automatic 30-minute deductions from the total of hours recorded as worked each day result in Almond Harvesters not getting paid for all the hours they actually worked?
>
> 3. Was Defendant required to pay Almond Harvesters overtime wages with respect to end of season bonuses?
>
> 4. Were Almond Harvesters provided a duty free meal period of at least 30 minutes in length when they worked more than 5 hours in a workday?
>
> 5. Were Almond Harvesters provided a second meal period or a third rest period when they worked more than 10 hours in a workday?

(Doc. 29 at 10) Because the class members were subjected to uniform policies, and there are common questions concerning whether Defendant's policies violated California wage and hour laws capable of class-wide resolution, the Court finds the commonality requirement is satisfied.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably

coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff was employed by Defendant in the same position as that held by the putative class members and subject to the same policies at issue here. Accordingly, the Court finds the typicality requirement is satisfied.

### 4.     Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a.     *Proposed class representative/class counsel*

Plaintiff seeks appointment as the Class Representative for the Settlement Class. (Doc. 29 at 11) He asserts there are no conflicts of interest and is aware of no ability of Defendant to assert a unique defense against his claims. *Id*. Also, he knows of no ability by anyone to claim that he "lacks sufficient zeal or competence" related to the matter. *Id*. Thus, it appears Plaintiff will fairly and adequately represent the interests of the classes.

Likewise, there is no evidence that the proposed class counsel, Gregory N. Karasik of Karasik Law Firm and Sahag Majarian II of Law Offices of Sahag Majarian II, have any conflicts or lack experience or competence in the relevant areas. (Doc. 29 at 11) Therefore, the Court finds the class counsel to be adequate.

B.     **Certification of a Class under Rule 23(b)(3)**

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts certification is appropriate under Rule 23(b)(3), which requires finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." According to Plaintiff,

> The predominance requirement is satisfied in this case because Defendant liability's turns on the answers to the common issues discussed above, which clearly predominate over any individual issues regarding the amount of any class member's damages. Considerations of judicial economy obviously favor litigating such common issues once in a class action instead of hundreds of times in separate lawsuits.

(Doc. 29 at 12)

Because Defendant's liability can be determined based on common evidence, the predominance requirement is satisfied. Similarly, the superiority requirement is satisfied because there is no evidence that class members have any interest in individually pursuing the claims. *Id*. at 13. Thus, certification of the conditional settlement classes is proper under Rule 23(b)(3).

## II.     **Evaluation of the Settlement Terms**

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiff's fiduciary obligations to the classes. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). In reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law

8

which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.   Strength of Plaintiff's Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp 1379, 1388 (D. Az. 1989)).

Plaintiff's counsel reports, Mr. Karasik, "Although Plaintiff also asserted derivative claims for civil penalties under Labor Code Sections 226 and for waiting time penalties under Section 203, these claims had little or no value because Defendant had very strong defenses to these claims. Plaintiff would have had to prove intentional and knowing violations to recover civil penalties under Labor Code Section 226, and Plaintiff would have had to prove that Defendant willfully failed to pay all wages owed upon termination to get derivative waiting time penalties under Labor Code Section 203." (Doc. 29-2 at 5) Given the challenges identified by Plaintiff, this factor weighs in favor of preliminary approval of the Settlement.

### B.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the proposed settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages. Plaintiff's counsel reports, Mr. Karasik, "Although Plaintiff also asserted derivative claims for civil penalties under Labor Code Sections 226 and for waiting time penalties under Section 203, these claims had little or no value because Defendant had very strong defenses to these claims. Plaintiff would have had to prove intentional and knowing violations to recover civil penalties under Labor Code Section 226, and Plaintiff would have had to prove that Defendant willfully failed to pay all wages owed upon termination to get derivative waiting time penalties under Labor Code Section 203."  (Doc. 29-2 at 5)

On the other hand, the proposed settlement provides for immediate recovery for the class. Thus, this factor weighs in favor of preliminary approval of the Settlement.

### C.     Risk of Maintaining Class Status throughout the Trial

According to Plaintiff, "Absent settlement, there was a risk that there would not be a certified class at the time of trial." (*Id.*) Moreover, Plaintiff reports, "Although Defendant does not oppose class certification for settlement purposes, Defendant would have vigorously opposed class certification absent settlement. Plaintiff thus faced a significant risk of not prevailing on a contested motion for class certification or losing at trial. In either event, class members would have recovered absolutely nothing. In light of the risks and uncertainty of continued litigation, Plaintiff clearly achieved a fair settlement well within the range of reasonable outcomes that merits approval." (Doc. 29-1 at 16)  Due to the risk to the claims of class members, this factor supports preliminary approval of the Settlement.

### D.     Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Plaintiff reports that the average gross recovery will be about $1,375. (Doc. 29-1 at 14) Counsel predicted the maximum potential liability was $1 million and, therefore, the settlement reflects 46% of this figure. (Doc. 29-1 at 14-15)  In addition, the settlement amount is non-reversionary so the amounts each class member receives may increase. *Id*.  Accordingly, the Court finds the amount offered in settlement supports preliminary approval of the agreement terms.

### E.     Extent of Discovery Completed and Stage of the Proceedings

Plaintiff assert that he engaged in discovery including propounding written discovery and submitting to a deposition. (Doc. 29-2 at 4)  In addition, the Defendant produced "hundreds of pages of documents." *Id*. After this, the parties engaged in mediation. *Id*. Thus, it appears that the parties made informed decisions, which lead to resolution of the matter and this factor supports preliminary approval of the Settlement.

///

### F. Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. As noted above, class counsel believe the settlement is an "excellent result" given the when compared against maximum possible liability and the risks of ongoing litigation. (Doc. 29-2 at 5; Doc. 29-3 at 2)

### G. Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of Settlement Agreement. (Doc. 29-4 at 4) However, because Class Members have not yet received notice, this factor shall be revisited during and after the hearing for final approval of the Settlement.

### H. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiff notes that the parties reached the settlement only after "prolonged negotiations over settlement details" overseen by mediator, Lisa Klerman. (Doc. 24-2 at 4) Notably, the Ninth Circuit has determined the "presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Because there is no indication the agreement was the product of collusive conduct, this factor weighs in favor of approval of the Settlement.

### I. Attorneys' Fees

Class counsel has requested attorneys' fees up to 20% of the gross settlement fund, for a total of $115,000. (Doc. 29-4 at 8, Settlement § 4.1(a)) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent on the action. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the

11

percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### J.     Class Representative Enhancement

The Settlement provides that plaintiff may seek an enhancement payment "up to" $7,500. (Doc. 29-4 at 8-9, Settlement § 4.1(b)) Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The Settlement explains that the enhancement is to be given to Plaintiff "for his service to the class, assuming the risks associated with this litigation, and granting Defendant with a general release." (Doc. 29-4 at 8-9, Settlement § 4.1(b)) Plaintiff reports he "spent a substantial amount of time assisting counsel and participating in the litigation. Plaintiff sat for deposition on April 26, 2016 and was present at the mediation on July 7, 2016." (Doc. 29-1 at 17) However, Plaintiff has not provided any information regarding the time spent on these tasks. Nevertheless, given the flexibility for an award *up to* $7,500, preliminary approval of class representative enhancement payments is appropriate.[2]

---

[2] Notably, a class representative enhancement of $7,500 may be appropriate in this case if there is sufficient documentation of the efforts expended by Plaintiff. *See, e.g., Wade v. Minatta Transp. Co.*, 2012 U.S. Dist. LEXIS 12057 (N.D. Cal. Feb. 1, 2012) (finding the class representatives, who reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the

### APPOINTMENT OF THE CLAIMS ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Dahl Administration as the Claims Administrator. (Doc. 29-4 at , Settlement § 1.30) Under the terms of Settlement, the Claims Administrator will locate class members, provide them notice, calculate and make payments for each class member, manage the cy pres funds and other duties set forth in the settlement agreement. (Doc. 29-4 at 13-17)

The parties estimate the costs may be as much as $25,000. (Doc. 29-4 at 9 § 4.1(c)).  Based upon the recommendation of the parties, Dahl Administration is appointed as the Claims Administrator.

### APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### I.      Content of the Notice

Plaintiff has submitted the proposed Notice—which provide detailed instructions—a proposed Share Form which details the share each class member will receive, and a Challenge Form on which class members may challenge the calculation of the number of hours they worked for Defendant (collectively "Notice Packet"). (Doc. 29-4 at 30-38)

---

settlement" failed to justify an incentive award of $10,000); *see also Alvarado v. Nederend*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011) (awarding $7,500 to class representatives); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (approving "incentive awards of $7,500 per class representative as compensation for their involvement in the case for the past five years, including appearing for depositions, assisting with written discovery, and working with Class Counsel to manage the settlement process"). Accordingly, Plaintiff SHALL provide further information—including specific tasks undertaken and the estimated time doing so— in seeking final approval of the Settlement to support the requested enhancement.

Upon review of the proposed Notice Packets, the Court finds the content is adequate. Each Notice provides information regarding the background of the action and claims asserted. The Notices explain the terms and provisions of the Settlement, including the payments from the gross settlement fund. In addition, the Notices explain the rights and procedures to receive a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines. Finally, the Notice Packet explains the effect of the judgment and settlement.

## II.     Method and Administration of Notice Packet

Within ten days after entry of this order, Defendant will give the Claims Administrator the class data, including "The Class List, in a format reasonably acceptable for the duties of the Settlement Administrator, which shall identify each Class Member's name, Last Known Address, Social Security number, telephone numbers, total number of Hours Worked as a Harvester during the Class Period." (Doc. 29-4 at 13, Settlement §7.2) Within 20 days of the date of this order, the Claims Administrator will mail the Notice Packet to members of the Settlement Classes." (*Id.*, at 14 § 7.4(a)) For any Notice Packet returned due to an incorrect address, the Claims Administrator will search for a more current address and re-mail the Notice Packet. (*Id.*, § 9.C)

Class Members who desire to be excluded from the action opt out within 45 days. (Doc. 29-4 at 19) Similarly, Class Members who wish to object to the Settlement must mail a written objection to the Claims Administrator within 45 calendar days of mailing. (Doc. 29-4 at 11, 34) Any objections received by the Claims Administrator shall be served upon both Class Counsel and Defendant's counsel (*Id.* at 11, Settlement § 5.2), and shall be filed with the Court by Class Counsel within five business days of their receipt.

## III.    Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines for returning a request for exclusion form, and any opposition to the Settlement. Likewise, the Request for Exclusion must be modified to include the relevant information.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and

reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed Settlement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's request for conditional certification of the Settlement Classes is **GRANTED**, and the classes are defined as follows:

   **General Class**: all seasonal employees of Defendant who worked in South Valley Farms harvesting operations during the time period between March 10, 2011 and December 31, 2015 ("Harvesters").

   **Sub Class #1**: all Harvesters who did not execute a release agreement with Defendant relating to the claims made in the Action.

   **Sub Class #2**: all Harvesters who did execute a release agreement with Defendant relating to the claims made in the Action.

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The proposed notice plan is **APPROVED**;

4. Leonel Rojas Rivera is **APPOINTED** the Class Representatives for the Settlement Classes;

5. Gregory N. Karasik of Karasik Law Firm and Sahag Majarian II of Law Offices of Sahag Majarian II are **APPOINTED** Class Counsel;

6. Dahl Administration is **APPOINTED** as the Claims Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7. The Class Representative enhancement request for Plaintiff is **GRANTED** preliminarily up to the amount of $7,500, subject to a petition and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's request for fees of not to exceed 20% of the gross settlement amount and costs up to $20,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **December 23, 2016**;

10. Costs of settlement administration shall not exceed $25,000;

11. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **October 3, 2016**;

12. Defendant **SHALL** provide the Claims Administrator with the Class Data no later than within ten days of the date of service of this Order;

13. The Claims Administrator **SHALL** mail the approved Class Notice Packet within 20 days of the date of service of this Order;

14. A class member who wishes to be excluded from settlement shall postmark the Request for Exclusion within 45 days of the mailing of the Notice Packet;

15. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to the Claims Administrator within 45 days of the mailing of the Notice Packet;

16. A Final Approval and Fairness Hearing is SET for **January 23, 2017** at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

17. Class Members may appear at the hearing **January 23, 2017**, in person or through his

or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

18. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **January 3, 2017**;
19. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and
20. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **September 26, 2016**          **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE