1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   LEONEL ROJAS RIVERA, individually and )   Case No.: 1:15-cv-00613 - JLT
     behalf of all others similarly situated,              )
12                                          )   ORDER GRANTING PLAINTIFF'S MOTION FOR
                      Plaintiff,            )   FINAL APPROVAL OF THE CLASS ACTION
13                                          )   SETTLEMENT
            v.                              )
14                                          )   (Doc. 37)
     AGRESERVES, INC., et al.,              )
15                                          )
                      Defendant.            )
16   _____)

17          Plaintiff Leonel Rojas Rivera seeks certification of the Settlement Class and final approval of

18   the settlement terms agreed upon with Defendant AgReserves Inc., doing business as South Valley

19   Farms.  (Doc. 37)  In addition, Plaintiff seeks an award of attorney's fees and costs from the Settlement

20   fund; costs for settlement administration; and a class representative enhancement. (Doc. 38)  Defendant

21   does not oppose these requests, and no objections were filed by class members.

22          Because Plaintiff carries his burden to demonstrate certification of the Settlement Class is

23   appropriate under Rule 23 of the Federal Rules of Civil Procedure and that the terms of the settlement

24   are fair, reasonable, and adequate, the request for final approval of the Settlement is **GRANTED**.

25   Plaintiff's request for attorney fees is **GRANTED** in the amount of $115,000.00; costs are awarded in

26   the amount of $14,512.51; settlement administration costs are granted in the amount of $7,912.00; and

27   Plaintiff's request for an incentive payment is **GRANTED** in the modified amount of $3,000.

28   ///

                                          1

**BACKGROUND**

Plaintiff alleges he worked for the defendant as an almond harvester.  (Doc. 7 at 3)  The work was seasonal from May or June through September or October.  (*Id.*)  Plaintiff asserts that during his employment, almond harvesters were not paid all of the minimum or overtime wages owed because of "uneven time rounding practices."  (*Id.* at 2)  Plaintiff asserts that another reason he was not paid for all of his hours worked is because, though 30 minutes was deducted from his hours each day for meal breaks, frequently, he was not allowed to stop work for meals. (*Id.* at 2, 4)  Further, Plaintiff contends the almond harvesters were not paid overtime rates on the "end of season bonuses."  (*Id.* at 2, 4)

In addition, the plaintiff alleges that he was regularly not permitted to take a meal break after five hours of work and was never provided a second meal break or a third rest break on days he worked more than ten hours.  (Doc. 7 at 4)  He alleges also that the other almond harvesters employed by Defendant were similarly situated.  (*Id.*)

Based upon these factual allegations, Plaintiff contends Defendant is liable for failure to pay minimum wages in violation of Cal. Labor Code §1197, failure to pay overtime wages as required by Wage Order 14, failure to provide meal and rest periods as required by Cal. Labor Code § 226.7 and Wage Order 14, unfair competition under Cal. Bus. & Prof. Code § 17200, failure to provide accurate wage statements as required by Cal. Labor Code § 226 and for failure to pay all wages owed upon termination as provided in Cal. Labor Code §§ 201 or 202.  (*See* Doc. 7 at 1)  Plaintiff seeks unpaid wages, penalties, liquidated damages and restitution in addition to fees and costs.  (*Id.* at 16)

The parties engaged in a full-day of mediation on July 7, 2016.  (Doc. 37-1 at 7)  At the mediation, the parties agreed upon "the material terms of a class action settlement."  (*Id.*)  The parties finalized their agreement with preparing a written settlement agreement, and Plaintiff sought preliminary approval of the terms.  (Doc. 29; Doc. 29-4)

The Court granted preliminary approval of the settlement on September 26, 2016.  (Doc. 31) The Court appointed Plaintiff as the Class Representative, and authorized him to seek an award enhancement up to $7,500.  (*Id.* at 15)  In addition, the Court appointed Gregory N. Karasik of Karasik Law Firm and Sahag Majarian II of Law Offices of Sahag Majarian II as Class Counsel, and authorized Class Counsel to seek fees that did not "exceed 20% of the gross settlement amount and costs up to

2

$20,000." (*Id.* at 15-16)  On October 4, 2016, the Court approved the Class Notice that conveyed this information to class members.  (Docs. 33, 34)  In addition, the Class Notice Packet informed class members of the class definition approved by the Court, the claims and issues to be resolved, how a class member may enter appear through an attorney or receive a settlement share, the method and deadlines to object to the settlement, and the binding effect of a class judgment.  (*See* Doc. 34)

The Settlement Administrator mailed the Class Notice Packet to 511 class members.  (Doc. 37-3 at 3, Kratz Decl. ¶ 6)  Of those packets, 35 "were returned as undeliverable and were sent to a professional address search firm for tracing," which yielded updated addresses for 25 individuals.  (*Id.*)  The Settlement Administrator re-mailed the packets, of which two were returned as undeliverable again.  (*Id.*)  Thus, twelve Class Notice Packets remained undeliverable.  (*See id.*)  Class Members were instructed to submit the Share Form no later than November 28, 2016 to receive a settlement share.  (*See* Doc. 37-3 at 10; Doc. 33 at 6)  The Settlement Administrator received 217 Share Forms, of which 192 were "valid, timely, and complete" and 25 individuals are challenging the record regarding the number of hours they worked.  (Doc. 37-3 at 3-4, Krazt Decl. ¶ 11)  No objections were received by the Settlement Administrator or filed with the Court.

Plaintiff filed the motion now pending before the Court for final approval of the Settlement on December 19, 2016.  (Doc. 37)  Defendant did not oppose the motion, and the matter was taken under submission pursuant to Local Rule 203(g).

## SETTLEMENT TERMS

Pursuant to the proposed settlement agreement ("the Settlement"), the parties agree to a gross settlement amount not to exceed $460,000.  (Doc. 29-4 at 5, Settlement § 1.15)

### I.      Payment Terms

The settlement fund will resolve the claims of "all seasonal employees of Defendant who worked in South Valley Farms harvesting operations during the time period between March 10, 2011 and December 31, 2015" divided into two subclasses: those "who <u>did not</u> execute a release agreement with Defendant relating to the claims made in the Action" and those "who <u>did</u> execute a release agreement with Defendant relating to the claims made in the Action." (Doc. 29-4 at 4, Settlement § 1.4) In addition, the Settlement provides for payments to the Class Representative, Class Counsel, and the

3

Claims Administrator. (Doc. 29-4 at 8-9; Settlement § 4.1)  Specifically, the Settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive up to $7,500;

- Class Counsel will receive up to $115,000— which equals 20% of the gross settlement fund—and up to $20,000 for expenses; and

- The Settlement Administrator will receive up to $25,000 for fees and expenses.

(*Id.*)  After these payments have been made, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (Doc. 29-4 at 9, Settlement § 4.3)

To receive a settlement share from the Net Settlement Amount, a class member was required to submit a timely and valid share form.  (Doc. 29-4 at 10, Settlement § 5.1)  Consequently, the exact amount each receives depends upon how many class members submitted timely and valid share forms.

## II.    Releases

The Settlement provides that Plaintiff's and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, release Defendant from the claims arising in the class period.  Specifically, the Settlement provides:

> In consideration of the Gross Settlement Amount and upon entry of the Final Approval Order, Plaintiff and Participating Class Members shall fully, finally, and forever release, settle, relinquish and discharge the Released Parties from any and all state or federal wage, and penalty claims against the Released Parties and any and all claims, debts, liabilities, demands, actions, or causes of actions of every nature and description that were alleged or that reasonably could have arisen out of the factual allegations contained in the First Amended Complaint (the "Complaint") on file with this court including, but not limited to, claims for compensation, overtime, minimum wages, off-the-clock work, meal period violations, rest period violations, waiting time penalties, itemized wage statement penalties, other penalties, attorneys' fees, and/or costs and all claims under the Private Attorneys General Act of 2004, and the Unfair Competition Law, arising from the claims described above within the Class Period. This release excludes the release of claims not permitted by law, claims arising outside of the Class Period, claims for unemployment, claims for retaliation, and claims for workers' compensation.

(Doc. 29-4 at 7, Settlement § 2.1)

The release for Plaintiff encompasses more claims than the release of Class Members, including "all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act

4

or omission by or on the part of any of the Released Parties committed or omitted prior to the Effective Date" whether they were known to Plaintiff at that time despite the provisions of California Civil Code § 1542. (Doc. 29-4 at 7, Settlement § 2.2)

**III.    Objections and Opt-Out Procedure**

Any Class Member who wishes may file objections or elect not to participate in the Settlement. The Notice of Pendency of Class Action and Proposed Settlement ("the Notice") explains the claims that are released as part of the Settlement. (Doc. 29-4 at 10-11 § 5)  In addition, the Notice explained the procedures for class members to request exclusion from the class and object to the terms of the Settlement. (*Id.* at 33-34)

**IV.    Service of the Class Notice Packets and Responses Received**

On September 26, 2016, the Court ordered the Settlement Administrator, Dahl Administration, to mail the Class Notice Packet to Class Members within twenty days. (Doc. 31 at 16)  Dahl served the Class Notice Packets to the extent possible, and the packets were mailed via the United States Postal Service to the 511 class members identified by Defendant. (*See generally*, Doc. 37-3 at 2-3)

According to Kelly Kratz, a principal at Dahl Administration, "thirty five (35) Notice Packets were returned as undeliverable and were sent to a professional search firm for tracing." (Doc. 37-3 at 3, Kratz Decl. ¶ 7)  Dahl Administration received updated addresses for 25 class members, and re-mailed the Class Notice Packets. (*Id.*)  Two of those packets were again returned as undeliverable. (*Id.*)

Ms. Kratz reports Dahl Administration received Share Forms from 217 Class members. (Doc. 37-3 at 3, Kratz Decl. ¶ 11)  She asserts that 192 of the Share Forms were deemed "valid, timely, and complete." (*Id.* at 3-4, ¶ 11)  In addition, 25 individuals completed the Challenge Form, "disputing the number of hours worked for South Valley Farms." (*Id.*)  No objections to the Settlement were mailed to Dahl Administration or filed with the Court.

**APPROVAL OF A CLASS SETTLEMENT**

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.

1    *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must

2    "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.*

3    (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or

4    reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

5    **I.      Certification of a Class for Settlement**[1]

6            Class certification is governed by the Federal Rules of Civil Procedure, which provide that

7    "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed.

8    R. Civ. P. 23(a).  Under the terms of the Settlement, the general class and subclasses are defined as:

9            **General Class**: all seasonal employees of Defendant who worked in South Valley
             Farms harvesting operations during the time period between March 10, 2011 and
10           December 31, 2015 ("Harvesters").

11           **Sub Class #1**: all Harvesters who <u>did not</u> execute a release agreement with Defendant
             relating to the claims made in the Action.

12           **Sub Class #2**: all Harvesters who <u>did</u> execute a release agreement with Defendant
             relating to the claims made in the Action.
13

14   (Doc. 29-4 at 4, Settlement § 1)

15           Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a)

16   are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores,*

17   *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304,

18   1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider

19   whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).

20   *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

21           **A.      Rule 23(a) Requirements**

22           The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed

23   by the named plaintiff's claims."  *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147,

24   155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)). Rule 23(a) requires:

25           (1) the class is so numerous that joinder of all members is impracticable; (2) there are
             questions of law or fact common to the class; (3) the claims or defenses of the
26           representative parties are typical of the claims or defenses of the class; and (4) the
             representative parties will fairly and adequately protect the interests of the class.

27

28   _____

         [1] Because the class was only conditionally certified upon preliminary approval of the Settlement, final certification
     of the Settlement Class is required.

1  *Id.*  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy

2  of representation.  *Falcon*, 457 U.S. at 156.

3         1.     Numerosity

4        A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P.

5  23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute

6  limitations."  *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more

7  than one hundred plaintiffs is impracticable.  *See Jordan v. county of Los Angeles*, 669 F.2d 1311,

8  1319 & n.10 (9th Cir. 1982) (finding the numerosity requirement was "satisfied solely on the basis of

9  the number of ascertained class members" and listing thirteen cases in which courts certified classes

10  with fewer than 100 members), *vacated on other grounds*, 469 U.S. 810 (1982).  Here, the Settlement

11  Class includes more than 500 individuals.  (Doc. 37-1 at 8, Doc. 37-3 at 2)  Therefore, the numerosity

12  requirement is satisfied.

13         2.     Commonality

14        Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

15  Commonality "does not mean merely that [class members] have all suffered a violation of the same

16  pro-vision of law," but "claims must depend upon a common contention."  *Dukes*, 131 S. Ct. at 2551.

17  In this case, Plaintiff contends the following are questions common to the class:

18       1.     Did rounding practices result in Almont Harvesters not getting paid wages for all the
19       hours they actually worked?

      2.     Did automatic 30-minute deductions from the total of hours recorded as worked each
20       day result in Almond Harvesters not getting paid for all the hours they actually worked?

21       3.     Was Defendant required to pay Almond Harvesters overtime wages with respect to end
22       of season bonuses?

23       4.     Were Almond Harvesters provided a duty free meal period of at least 30 minutes in
      length when they worked more than 5 hours in a workday?

24       5.     Were Almond Harvesters provided a second meal period or a third rest period when
25       they worked more than 10 hours in a workday?

26  (Doc. 29 at 10)  Because the class members were subjected to uniform policies, and there are common

27  questions concerning whether Defendant's policies violated California wage and hour laws capable of

28  class-wide resolution, the Court finds the commonality requirement is satisfied.

### 3.    Typicality

The typicality requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).

Plaintiff was employed by Defendant in the same position as that held by the putative class members and subject to the same policies at issue here.  Accordingly, the Court finds the typicality requirement is satisfied.

### 4.    Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to have a binding effect. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a.    Class counsel

As the Court noted previously, there is no evidence that the proposed class counsel, Gregory N. Karasik of Karasik Law Firm and Sahag Majarian II of Law Offices of Sahag Majarian II, have any conflicts or lack experience or competence in the relevant areas.  (Doc. 29 at 11) Therefore, the Court finds the class counsel to be adequate. In addition, Defendant did not question the adequacy of counsel. Therefore, the Court finds Class Counsel satisfy the adequacy requirements.

#### b.    Class representative

Plaintiff sought appointment as the class representative of the Settlement Class, and asserted there are no conflicts of interest and is aware of no ability of Defendant to assert a unique defense

8

against his claims.  (Doc. 29 at 11)  Also, he knows of no ability by anyone to claim that he "lacks sufficient zeal or competence" related to the matter. (*Id*.)  Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

**B.      Certification of a Class under Rule 23(b)**

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts that for Settlement purposes, class certification is appropriate under Rule 23(b)(3), which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  These requirements are generally called the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

**1.      Predominance**

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).  In this case, Defendant's liability can be determined based upon common evidence, thereby satisfying the predominance requirement.

**2.      Superiority**

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior

method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

###### a.      *Class members' interest in individual litigation and other cases*

This factor relevant when class members have suffered sizeable damages or have an emotional stake in the litigation. *See In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)).  Here, there is no evidence that the Class Members have an interest in pursuing or controlling separate cases. (*See* Doc. 29 at 12)  Moreover, the parties have not identified any other pending litigation related to Plaintiff's claims. Therefore, these factors weigh in favor of class certification.

###### b.      *Desirability of concentrating litigation in one forum*

Because common issues predominate on Plaintiff's class claims, "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011). Moreover, because the parties have resolved the claims through the Settlement, this factor does not weigh against class certification.

###### c.      *Difficulties in managing a class action*

The Supreme Court explained that, in general, this factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  However, because the parties have reached a settlement agreement, it does not appear there are any problems with managing the action.  Therefore, this factor weighs in favor of class certification.

Because the factors set forth in Rule 23(b) weigh in favor of certification, the Settlement Class is maintainable under Rule 23(b)(3).  Accordingly, Plaintiff's request to certify the Settlement Class is **GRANTED.**

## II.      Approval of the Settlement

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2). Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary obligations to the

class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The Ninth Circuit

identified several of factors to evaluate whether a settlement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of
> further litigation; the risk of maintaining class action status throughout the trial; the
> amount offered in settlement; the extent of discovery completed, and the stage of the
> proceedings; the experience and views of counsel; the presence of a governmental
> participant;[2] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the

product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at

458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing settlement

terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law

which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and

citation omitted).

## A.      Strength of Plaintiffs' Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and

weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to

reach these agreements."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012)

(quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp 1379, 1388 (D. Az. 1989)).

Previously, Plaintiff's counsel, Mr. Karasik, asserted "Although Plaintiff also asserted

derivative claims for civil penalties under Labor Code Sections 226 and for waiting time penalties

under Section 203, these claims had little or no value because Defendant had very strong defenses to

these claims. Plaintiff would have had to prove intentional and knowing violations to recover civil

penalties under Labor Code Section 226, and Plaintiff would have had to prove that Defendant willfully

failed to pay all wages owed upon termination to get derivative waiting time penalties under Labor

Code Section 203."  (Doc. 29-2 at 5)  Given the challenges identified by Plaintiff, this factor weighs in

favor of preliminary approval of the Settlement.

## B.      Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."

---

[2] This factor does not weigh in the Court's analysis because the government is not a party in this action.

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further litigation, including re-certification of a class and discovery on the issue of damages.  Further, Plaintiff asserts, "continued litigation would likely have involved expensive and lengthy disputes regarding Plaintiff's discovery of class member contact information, personnel records, and/or other employment records."  (Doc. 37-1 at 9-10)  On the other hand, the Settlement provides for the immediate recovery, averaging approximately than $1,382 per class member.  (Doc. 37-1 at 10)  Thus, this factor weighs in favor of approval.

### C.      Maintenance of Class Status throughout the Trial

According to Plaintiff, "Although Defendant does not oppose class certification for settlement purposes, Defendant would have vigorously opposed class certification absent settlement. Plaintiff thus faced a significant risk of not prevailing on a contested motion for class certification or losing at trial." (Doc. 29-1 at 16)  As Plaintiff observes, "In either event, class members would have recovered absolutely nothing."  (*Id.*)  Due to the risk to the claims of class members, this factor supports preliminary approval of the Settlement.

### D.      Amount offered in Settlement

The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625, 628.

Plaintiff reports that the average gross recovery for the class members who submitted the Share Form will be about $1,382.  (Doc. 37-1 at 10)  Class Counsel predicted the maximum potential liability was $1 million and, therefore, the settlement reflects 46% of this figure.  (*Id.*)  Based upon the parties' agreement that this amount provides adequate compensation for class members, the Court finds the amount offered supports approval of the class settlement.

### E.      Extent of Discovery Completed and Stage of the Proceedings

Plaintiff assert that he engaged in discovery including propounding written discovery and

submitting to a deposition.  (Doc. 29-2 at 4)  In addition, the Defendant produced "hundreds of pages of documents."  (*Id.*)  After this, the parties "negotiate[ed] at arms length during a mediation conducted by an extremely experienced and well respected mediator."  (Doc. 37-1 at 12)  Thus, it appears that the parties made informed decisions, which lead to resolution of the matter, and this factor supports final approval of the Settlement.

###### F.      Views of Counsel

As noted above, Class Counsel believe the settlement is an "excellent result" given the when compared against maximum possible liability and the risks of ongoing litigation.  (Doc. 37-1 at 10) The opinion of Class Counsel that the Settlement is "fair and reasonable" (*id.* at 12) is entitled to significant weight and support approval of the settlement agreement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

###### G.      Reaction of Class Members to Settlement

Significantly, no objections were filed by Class Members following service of the Class Notice Packet.  In addition, Plaintiff agreed to the terms of the Settlement, and did not have any objections to the terms.  (*See* Doc. 37-4 at 1-2, Rojas Decl. ¶ 2)  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.  Therefore, this factor weighs in favor of the Settlement.

###### H.      Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  Plaintiff notes that the parties reached the settlement with the assistance of an experienced mediator. (Doc. 37-1 at 12)  Notably, the Ninth Circuit has determined the "presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Because there is no indication the agreement was the product of collusive conduct, this factor weighs in favor of approval of the Settlement.

1    **IV.    Conclusion**

2           The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement,

3    which appears to be is fair, reasonable, and adequate as required by Rule 23.  Therefore, final approval

4    of the Settlement Agreement is **GRANTED**.

5                         **REQUEST FOR ATTORNEYS' FEES AND COSTS**

6           Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be

7    awarded pursuant to Rule 23(h).  The Settlement authorizes Class Counsel to seek attorneys' fees "up

8    to twenty-five percent (25%) of the Gross Settlement Amount."  (Doc. 29-4 at 8, Settlement § 4.1(a))

9    Here, Class Counsel seek an award of 25% of the settlement fund in the amount of $115,000, and

10   $14,521.51 in costs.  (Doc. 37-1 at 14-15)  Defendant agreed not to oppose Plaintiff's request for fees

11   and costs. (*See* Doc. 29-4 at 9, Settlement § 4.2)

12          Under the "common fund" doctrine, attorneys who create a common fund for a class may be

13   awarded their fees and costs from the fund.  *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444

14   U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than

15   himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").  An award

16   from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without

17   contributing to its cost are unjustly enriched at the successful litigant's expense," and as such

18   application of the doctrine is appropriate "when each member of a certified class has an undisputed and

19   mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."  *Boeing*

20   *Co.*, 444 U.S. at 478.  Here, the Settlement applies a distribution formula to determine the amount paid

21   to class members who submitted a valid Share Form, and application of the common fund doctrine is

22   appropriate.

23   **I.    Legal Standards**

24          "[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class

25   action settlement agreement" to determine whether it is "'fundamentally fair, adequate, and reasonable'

26   Fed.R.Civ.P. 23(e)."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To do so, the Court

27   must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement

28   agreement." *Id.*

                                            14

A court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

*Id.* at 1302 (internal quotation marks, citation omitted). As a result the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit determined both a lodestar and percentage of the common fund calculation "have [a] place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Whether the Court

applies the lodestar or percentage method, the Ninth Circuit requires "fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also Staton*, 327 F.3d at 964 (fees must be "fundamentally fair, adequate, and reasonable").

### A.     Lodestar Method

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Next, the Court may adjust the lodestar upward or downward using a "multiplier" considering the following factors adopted by the Ninth Circuit in a determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). However, the Court has since determined that the fixed or continent nature of a fee and the "desirability" of a case are no longer relevant factors. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)).

### B.     Percentage from the common fund

As the name suggests, under this method, "the court makes a fee award on the basis of some percentage of the common fund." *Florida*, 915 F.2d at 545 n. 3. In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark. *See, Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)*; *Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark award for attorney fees"). The percentage may be adjusted below or above the benchmark, but the Court's reasons for adjustment must be clear. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

16

1    272 (9th Cir. 1989).

2           When assessing whether the percentage requested is reasonable, courts may consider a number

3    of factors, including "(1) the results obtained for the class; (2) the risk undertaken by counsel; (3) the

4    complexity of the legal and factual issues; (4) the length of the professional relationship with the

5    client; (5) the market rate; and (6) awards in similar cases." *Romero v. Produces Dairy Foods, Inc.*,

6    2007 U.S. Dist. LEXIS 86270, at *8-9 (E.D. Cal. Nov. 14, 2007) (citing *Vizcaino*, 290 F.3d at 1048-

7    1050; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

8    **II.     Evaluation of the fees requested**

9           Class Counsel request the Court determine the reasonableness of the fee award by using the

10   percentage of the common fund rather than the lodestar method.  (*See* Doc. 37-1 at 13).  Notably,

11   "[t]he district court has discretion to use the lodestar method or the percentage of the fund method in

12   common fund cases." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (quoting *In re

13   Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir.

14   1997)).  Further, the Court must consider similar factors under either method.  *See Kerr*, 526 F.2d at

15   70; *Vizcaino*, 290 F.3d at 1048-1050.  The Court may "appl[y] the lodestar method as a crosscheck" to

16   determine whether the percentage requested is reasonable.  *Vizcaino*, 290 F.3d at 1050, n.5.

17          **A.     Time and labor required**

18          Gregory Karasik reports he spent 107.5 hours on this action.[3]  (Doc. 37-2 at 6, Karasik Decl.

19   ¶18)  His co-counsel, Sahag Majarian, did not report any time expended on the action.  There is no

20   evidence that Class Counsel were precluded from other work because of the pendency of this litigation.

21   Nevertheless, the time expended by Class Counsel supports an award equal to the Ninth Circuit's

22   benchmark.

23          **B.     Results obtained for the class**

24          Courts have recognized consistently that the result achieved is a major factor to be considered in

25   making a fee award.  *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir.

26   1994).  Here, Plaintiff reports that "the 217 class members who submitted claims will receive, on

27

28          [3] Mr. Karasik's timesheet indicates a total of 112.5 hours.  (Doc. 37-2 at 6, ¶ 18; *id.* at 13)  However, this total
     includes five hours he anticipated for attending the final approval hearing (Doc. 37-2 at 13), which the Court vacated.

average, approximately $1,382 each." (Doc. 37-1 at 10)  Further, the settlement fund "reflects a gross recovery equal to 46% of Defendant's estimated maximum liability on Plaintiffs principal claims." (Doc. 37-1, citing Karasik Decl. ¶ 12)  Given the results achieved by counsel on behalf of Class Members, this factor supports an award of the fees requested.

### C.    Risk undertaken by counsel

The risk of costly litigation and trial is an important factor in determining the fee award. *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994).  The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  Here, as discussed above, Plaintiff asserts there was a "substantial risk of an adverse result on a contested motion for class certification." (Doc. 37-1 at 10)

Notably, there is no evidence that Class Counsel faced extreme risks in pursuing this litigation. For example, in *Vizcaino*, the plaintiffs "lost in the district court—once on the merits, once on the class definition" and the class counsel twice "succeeded in reviving their case on appeal." *Id.*, 290 F.3d at 1303.  The court found the pursuit of the case was "extremely risky" given the absence of supporting precedents" and the challenges faced in the appeals.  *Id.*  As such, the risks supported an award of fees slightly above the benchmark. *Id.* at 1048-49.  In contrast, here, though Defendant denied liability, Class Counsel were not faced with a challenge to merits of the claims or the propriety of class certification.  Based upon these facts, the Court finds this factor supports an award of the 25% benchmark is appropriate.

### D.    Complexity of issues and skill required

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award.  *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved

are significant factors in determining a fee award").

Here, Class Counsel do not argue the matter required exceptional skills, or that the issues presented were very complex.  However, it Class Counsel displayed skills consistent of those that would be expected of attorneys of comparable experience.  Therefore, the skill required and lack of complexity supports the requested fee award.

### E.    Length of professional relationship

Class Counsel initiated this action on behalf of Plaintiff in March 2015, and the matter was resolved following mediation in July 2016.  The short duration of the professional relationship may warrant an award below the benchmark.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (finding "the 25 percent standard award" was appropriate although "the litigation lasted more than 13 years").

### F.    Awards in similar cases

Notably, as discussed above, 25% of a common fund is "benchmark award for attorney fees" in the Ninth Circuit.  *Hanlon*, 150 F.3d at 1029; *see also Vizcaino*, 290 F.3d at 1047 (9th Cir. 2002).  Previously, this Court observed that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value."  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013).  Thus, this factor supports the fees requested.

### G.    Lodestar Crosscheck and Market Rate

In general, the first step in determining the lodestar is to determine whether the number of hours expended was reasonable.  *Fischer*, 214 F.3d at 1119.  However, when the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours."  *See Schiller*, 2012 WL 2117001 at *20 (citing *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306 (3d Cir.2005); *In re Immune Response Sec. Litig*., 497 F.Supp.2d 1166 (S.D. Cal. 2007)).  Assuming the hours reported are reasonable, the Class Counsel reports the resulting lodestar totals $56,250 with a $500 hourly rate and $86,052.50 with a $765 hourly rate.  (*See* Doc. 37-2 at 6, Karasik Decl. ¶18)  Thus, the fees requested are 1.34-2.04 times the lodestar calculated by Class Counsel.  (*Id.*)

Significantly, however, the hourly fees used to calculate this amount must be reduced to reflect the market rate within this community.  The Supreme Court explained that attorney fees are to be

1  calculated with "the prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S.

2  886, 895-96 and n.11 (1984).  In general, the "relevant community" for purposes of determining the

3  prevailing market rate is the "forum in which the district court sits."  *Camacho v. Bridgeport Fin., Inc.*,

4  523 F.3d 973, 979 (9th Cir. 2008).  Thus, when a case is filed in the Fresno Division of the Eastern

5  District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to

6  establish the lodestar hourly rate . . ." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D.

7  Cal. 2011).

8          The hourly rates sought by attorneys on this action range from $500 to $765 per hour.  (*See*

9  Doc. 37-2 at 6, Karasik Decl. ¶18)  Class Counsel asserts these rates "are commensurate with the rates

10  of similarly experienced class action lawyers and less than the hourly rates with comparable experience

11  set forth in the Laffey Matrix."  (*Id.* at 7, ¶19)  The Laffey Matrix is "a widely recognized compilation

12  of attorney and paralegal rates used in the District of Columbia, and frequently used in determining fee

13  awards." *Schiller,* 2012 WL 2117001 at *21.  Nevertheless, this Court has rejected rates based upon the

14  Laffey Matrix, finding that "the hourly rate[] generally accepted in the Fresno Division for competent

15  experienced attorneys is between $250 and $380, with the highest rates generally reserved for those

16  attorneys who are regarded as competent and reputable and who possess in excess of 20 years of

17  experience." *Silvester v. Harris*, 2014 U.S. Dist. LEXIS 174366, 2014 WL 7239371 at *4 (E.D. Cal.

18  Dec. 17, 2014) (citing *Willis v. City of* Fresno, 2014 U.S. Dist. LEXIS 97564 (E.D. Cal. July 17, 2014);

19  *Gordillo v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 84359 (E.D. Cal. June 19, 2014)).  Likewise, this

20  Court found the Laffey Matrix is "irrelevant to determining reasonable hourly rates for" counsel in the

21  Eastern District of California). The Laffey Matrix also fails to account for differences in hourly rates

22  depending on the area of practice." *Johnson v. Wayside Property, Inc.*, 2014 WL 6634325 at * 7 (E.D.

23  Cal. Nov. 21, 2014).

24          Mr. Karasik reports that he has "more than 20 years experience."  (Doc. 37-2 at 2, Karasik Decl.

25  ¶ 19)  Given Mr. Karasik's experience, a reasonable hourly rate is $380.  *See e.g., Silvester*, 2014 WL

26  7239371 (awarding $380 per hour to an attorney with "about 20 years of experience"); *Miller v.*

27  *Schmitz*, 2014 WL 642729 at *3 (E.D. Cal. Feb. 18, 2014) (the "prevailing hourly rate in this district is

28  in the $400/hour range for experienced attorneys," and awarding $350 per hour for an attorney with 20

years of experience).  With the rate adjustments to prevailing market rates, the lodestar amount is reduced to a total of **$42,750.00**.

## III.     Amount of Fees to be Awarded

Significantly, there is a strong presumption that the lodestar is a reasonable fee.  *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978.  As a result, "a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high."  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000 (internal punctuation and citations omitted).  Nevertheless, the Ninth Circuit observed that the lodestar is "routinely enhanced . . . to reflect the risk of non-payment in common fund cases."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1300. Class Counsel argues that the Court should apply a multiplier because "[a]warding Plaintiff a lesser amount of fees based on a lower multiplier would penalize Plaintiff's counsel for achieving a stellar result with maximum efficiency."  (Doc. 37-1 at 14)

Here, the requested fees of $115,000.00 would result in a multiplier of approximately 2.69, which is within the range typically awarded in the Ninth Circuit.  *See Vizcaino*, 290 F.3d at 1051 ("multiples ranging from one to four are awarded in common fund cases when the lodestar method is applied").  Thus, the adjusted lodestar supports a determination that the fees requested by Class Counsel are fair.  Accordingly Class Counsel's request for attorney fees is **GRANTED**.

## REQUESTS FOR COSTS

## I.      Litigation Expenses

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54.  Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Here, Plaintiff's counsel seeks a total reimbursement of $14,521.51 for costs incurred in the course of this action.  (Doc. 37-1 at 14)  Mr. Karasik reports that these expenses included CourtCall, filing fees, travel expenses, mailing, and mediator fees.  (Doc. 37-2 at 9-10)

Previously, this Court noted costs "including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed

1  in these types of cases." *Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17,

2  2011).  Accordingly, the request for litigation costs in the amount of $14,521.51 is **GRANTED**.

3  **II.    Costs of Settlement Administration**

4          The Settlement authorizes the reimbursement of expenses up to $25,000 for the Settlement

5  Administrator, Dahl Administration.  (Doc. 29-4 at 9, Settlement § 4.2(c))  Ms. Kratz reports that "the

6  settlement administration services performed to date and settlement administration activities remaining,

7  including distribution of payments and penalty reporting" come to a total cost of $7,912.00.  (Doc. 37-3

8  at 4, Kratz Decl. ¶ 12)

9          The administrative expenses requested are within the range of previous costs for claims

10 administration awarded in this District.  *See, e.g, Bond v. Ferguson Enterprises, Inc.*, 2011 WL

11 2648879, at *8 (E.D. Cal. June 30, 2011) ($18,000 settlement administration fee awarded in wage an

12 hour case involving approximately 550 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D.

13 482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case

14 involving approximately 170 potential class members).  Accordingly, the request for $7,912.00 in

15 administration expenses for the settlement administration by Dahl Administration is **GRANTED**.

16                      **PLAINTIFF'S REQUEST FOR AN INCENTIVE AWARD**

17         In the Ninth Circuit, a court has discretion to award a class representative a reasonable

18 incentive payment.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.

19 Incentive payments for class representatives are not to be given routinely.  In *Staton*, the Ninth Circuit

20 observed,

21         Indeed, '[i]f class representatives expect routinely to receive special awards in addition
           to their share of the recovery, they may be tempted to accept suboptimal settlements at
22         the expense of the class members whose interests they are appointed to guard."
           *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also*
23         *Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D.
           173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a
24         separate peace with defendants, grave problems of collusion are raised.").

25 *Id.* at 975.  In evaluating a request for an enhanced award to a class representative, the Court should

26 consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the

27 class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort

28 the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Id.*

at 977.  Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney

general."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Here, Plaintiff seeks

an award "enhancement payment" in the amount of $7,500 in accordance with the terms of the

Settlement.  (*See* Doc. 29-4 at 8-9, Settlement § 4.1(b); Doc. 37-1 at 14)

### A.      Actions taken to benefit the class and time expended

Plaintiff asserts, "Since I learned about this lawsuit, I have been in contact with my lawyers on a

regular basis and have assisted them with the prosecution of this lawsuit in every way they asked."

(Doc. 37-4 at 2, Rivera Decl. ¶ 4)  Plaintiff reports he "sat for deposition on April 26, 2016 and

participated in the mediation on July 7, 2016."  (*Id.*)  In addition, Plaintiff noted that his actions

included submitting the declaration to support final approval of the Settlement.  (*Id.*)  He estimates that

he spent a total of 44 hours on actions related to the litigation, "including all the time required for [him]

to travel to and from [the] deposition and mediation."  (*Id.*)

Notably, Plaintiff would have assisted in much of these same actions to the same extent

regardless of whether the action was brought on behalf of the class.  Nevertheless, undoubtedly, his

actions benefitted the class, and this factor supports an incentive payment.

### B.      Fears of workplace retaliation

Plaintiff does not contend he feared retaliation for their connections to this action, and Plaintiff

is a former employee of Defendant such that retaliation is not possible.  Further, there is no support for

Plaintiff's speculation that he could face "blacklisting" for the filing of this action.  Thus, this factor

does not support incentive payments to Plaintiff.

### C.      Reasonableness of Plaintiff's request

Considering the actions taken by Plaintiff and the time expended, an incentive award is

appropriate.  In determining the amount to be awarded, the Court may consider the time expended by

the class representative, the fairness of the hourly rate, and how large the incentive award is compared

to the average award class members expect to receive.  *See, e.g., Ontiveros v. Zamora*, 2014 WL

5035935 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to

determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist.

LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably

close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11 (considering the time and financial risk undertaken by the plaintiff).  Here, considering these factors, the $7,500 award that Plaintiff requests is out of proportion to the efforts made and time expended.

### 1.   Time expended

In *Alvarado*, the Court noted the class representatives "(1) travelled from Bakersfield to Sacramento for mediation sessions (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation."  *Id.*, 2011 WL 1883188 at *11.  Further, the Court noted the plaintiffs "undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant."  *Id.*  In light of these facts, the Court found an award of $7,500 for each plaintiff was appropriate for the time, efforts, and risks undertaken.

Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class."  *Bond*, 2011 WL 2648879, at *15.  Similarly, the Northern District determined class representatives failed to justify incentive awards of $10,000 although the plaintiffs reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement." *Wade v. Minatta Transport Co.*, 2012 U.S. Dist. LEXIS 12057, at *3 (N.D. Cal. Feb. 1, 2012).

In this case, the extent to which Plaintiff assisted with discovery is unclear, and it does not appear that Plaintiff was involved in any investigations related to his claims. Further, Plaintiff fails to provide any information regarding the time it took him to travel or participate in mediation, which was less than a full day.  (*See* Doc. 37-2 at 13) (indicating Plaintiff's counsel spent 12.4 hours to "prepare for and attend mediation; travel to/from San Bernardino").  Thus, it appears the inconvenience suffered by Plaintiff was minimal, and the time expended does not support request of $7,500.

2.    Fairness of the hourly rate

Recently, this Court criticized a requested award of $20,000 where the plaintiff estimated "he spent 271 hours on his duties as class representative over a period of six years," because the award would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 2014 WL 5035935 at *5-6. The Court explained that "[i]ncentive awards should be sufficient to compensate class representatives to make up for financial risk . . . for example, for time they could have spent at their jobs." *Id.* at *6 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  The Court found an award of "$50 per hour fairly compensate[] the named plaintiff for his time and incorporates an extra incentive to participate in litigation," considering that the plaintiff's hourly flat rate while employed by the defendant was $15 per hour. *Id.* at *6; n.3.  Nevertheless, the Court increased the award from $13,550 (calculated with $50 per hour for the 271 hours) to $15,000 because "Mr. Ontiveros relinquished the opportunity to bring several of his own claims." *Id.* at *6.

Here, with the estimated 44 hours of tasks taken by Plaintiff, the requested award of $7,500 would compensate Plaintiff at a rate of $170 per hour.  If the Court were to adopt the $50 per hour rate recently approved in *Ontiveros*, Plaintiff's incentive award would be reduced to $2,200.

3.    Comparison of the award to those of the Class Members

*In Rankin*, the Court approved an incentive award of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 U.S. Dist. LEXIS 72250, at *5.  The Court found the amount reasonable, in part because "the sum is reasonably close to the average per class member amount to be received." *Id.*  In contrast, here Plaintiff seeks an award of $7,500, which is more than five times the average award for Class Members will receive. (*See* Doc. 37-1 at 10) (estimating the average award for class members who submitted the Share Form to be $1,382).  Consequently, this factor does not favor an award in the amount requested.

**E.    Amount to be awarded**

Given the lack of information related to the actions taken by Plaintiff and the minimal time expended, the Court is unable to find the requested award of $7,500 is appropriate.  However, Plaintiff clearly expended efforts on behalf of the class, submitted to a deposition, and participated in mediation. In light of the fact that the average award expected to be received by the class members is $1,382 and

the Court finds $3,000 is an appropriate incentive award.  In addition, this results in an hourly rate which is similar to the hourly rate approved by the Court in *Ontiveros*.  Thus, Plaintiff's request for an incentive payment is **GRANTED** in the modified amount of $3,000.

## CONCLUSION AND ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.  Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED**;

2.  The request for certification of the Settlement Class is **GRANTED** and defined as:

> **General Class**: all seasonal employees of Defendant who worked in South Valley Farms harvesting operations during the time period between March 10, 2011 and December 31, 2015 ("Harvesters").

> **Sub Class #1**: all Harvesters who did not execute a release agreement with Defendant relating to the claims made in the Action.

> **Sub Class #2**: all Harvesters who did execute a release agreement with Defendant relating to the claims made in the Action.

3.  Plaintiff's request for a class representative incentive payment is **GRANTED** in the amount of $3,000.00;

4.  Class Counsel's motion for attorneys' fees is **GRANTED** in the amount of $115,000.00, which is 25% of the gross settlement amount;

5.  Class Counsel's request for costs in the amount of $14,521.51 is **GRANTED**;

6.  The request for fees for the Settlement Administrator Dahl Administration in the amount of $7,912.00 is **GRANTED**;

7.  The California Labor Code Private Attorney General Act payment to the State of California in the amount of $7,500 is **APPROVED**;

8.  The action is dismissed with prejudice, with each side to bear its own fees costs and except as otherwise provided by the Settlement and ordered by the Court; and

///
///
///
///
///

9.      The Court retains jurisdiction to consider any further applications arising out of or in connection with the Settlement.


IT IS SO ORDERED.

Dated:   **February 1, 2017**                 **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE

27